UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO.: |
| | ) | |
| JAMES ASSELIN | ) | |

<u>MEMORANDUM IN SUPPORT OF MOTION FOR DOWNWARD DEPARTURE</u>

I. <u>INTRODUCTION</u>

On or about March 22, 2004, the Defendant, James Asselin, pled guilty to counts 3, 85, and 86 of Indictment # 03-30015-MAP. In calculating Mr. Asselin's Criminal History Category for purposes of the Sentencing Guidelines, the government contends that he has a total criminal history score of three (3), which places him within a category II for sentencing purposes.

The government relies on Mr. Asselin's prior conviction from on or about March 22, 2004 in the United States District Court in Springfield, Massachusetts for "Conspiracy to Defraud the United States", "Federal Program Fraud", and "Money Laundering"—Indictment #03-30015-MAP. These convictions arose from facts and circumstances surrounding Mr. Asselin's association and dealings with the Springfield Business Development Fund and the Greater Springfield Entrepreneurial Fund, Inc. ("GSEF"). Further, it involved defrauding the U.S. Department of Commerce out of one hundred forty-five thousand two hundred and twenty-one dollars ($145,221.00) and the U.S.

1

Small Business Administration out of five hundred and seventy eight thousand three hundred and thirty-two dollars ($578,332.00). Mr. Asselin received a forty-one (41) month sentence to the Bureau of Prisons, three (3) years supervised release, and a court imposed restitution order in the amount of seven hundred and twenty-three thousand five hundred and fifty three dollars ($723,553.00), to be paid joint and severally with Mr. Asselin's other co-defendants.

   Mr. Asselin contends that this court should depart downward from the government's proposed Criminal History Category of II and impose a Category I. In support, Mr. Asselin maintains that: (1) under U.S.S.G. §4A1.1 and §4A1.2, the "prior sentence" should not be counted as such because it was for conduct that was contemporaneous with the *instant offense*; (2) under §5G1.3, a court may depart downward due to the unwarranted sentencing disparities caused by the government's charging decisions; and (3) under §4A1.3, his criminal history category significantly over-represents the seriousness of his criminal history or the likelihood that he will commit further crimes. As such, Mr. Asselin asserts that he is entitled to a downward departure in his Criminal History Category from II to I.

II.   THE "PRIOR SENTENCE" WHICH THE GOVERNMENT RELIES ON TO CALCULATE MR. ASSELIN'S CRIMINAL HISTORY AT A CATEGORY II WAS THE RESULT OF CONDUCT THAT IS RELEVANT TO THE INSTANT OFFENSE AND THUS SHOULD NOT BE COUNTED.

Under U.S.S.G. §4A1.1, points are added to a defendant's criminal history category based upon the length of their "prior sentences". Under §4A1.2, a "prior sentence" is defined as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, *for conduct not part of the instant offense*" (emphasis added). The Application Notes for §4A1.2 provide that conduct that is part of the instant offense means conduct that is relevant to the instant offense under the provisions of §1B1.3. Further, under §1B1.3, offenses that are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses" may be considered as part of the same course of conduct. See U.S.S.G. §1B1.3 (application note 9). Relevant factors used in this determination are similarity of the offenses, regularity of the offenses, and the time interval between the offenses. Id.

The First Circuit, in U.S. v. Collazo-Aponte, 216 F.3d 163, 202-04 (1st Cir. 2000), adopted a "severable and distinct test" when reviewing these issues. More specifically, the court held that "as the Guidelines indicate, '[t]his is necessarily a fact-specific inquiry that involves more than just a consideration of the elements of the two offenses. Factors such as the temporal and geographical proximity of the two offenses, common victims, and a common criminal plan or intent also must be considered.'"

3

Collazo-Aponte, 216 F.3d at 202 (citing United States v. Beddow, 957 F.2d 1330, 1338 (6th Cir. 1992).

Additionally, the Third Circuit held in United States v. Irvin, 369 F.3d 284 (3rd Cir. 2004), that the government should not be able to "elect to treat, at its option, certain activity either as relevant conduct, or as a prior offense." Id. at 292. Further, "[t]his heads I win, tails you lose" gambit simply has no basis in the regime of the Sentencing Guidelines." Id. In Irvin, the defendant was convicted in the federal court of being a felon in possession of a firearm. This case involved the unfortunate death of the defendant's three-year old son who found the defendant's gun and accidentally shot himself. Before prosecution in the federal court the defendant was prosecuted and convicted in the state court on involuntary manslaughter and child endangerment. At his subsequent federal sentencing the court gave him an additional Criminal History Category increase due to his state court conviction being a "prior sentence". The Third Circuit reversed the district court judge's decision to increase the Criminal History Category. In so holding the Third Circuit found that the "prior sentence" was the same course of conduct as the instant offense.

In this matter, Mr. Asselin's "prior sentence" should not be counted in calculating his Criminal History points as it is sufficiently connected or related to the instant offense. The

4

"prior sentence" and the instant offense are harmoniously similar in several ways. First, both involve conspiracies to defraud governmental entities. As the presence of common "victims" is one of the factors espoused in Collazo-Aponte and the "prior sentence" involved defrauding the U.S. Department of Commerce and the U.S. Small Business Administration and the instant offense involved defrauding the Springfield Housing Authority it can be stated that these offenses had "common victims".

Another similarity, as evidence is the aforementioned example, is the presence of a common criminal plan or intent. It is clear from the facts and circumstances surrounding both the instant offense and the "prior sentence" that Mr. Asselin was involved in a common scheme to defraud governmental entities. More specifically, each scheme involved the common plan to defraud governmental agencies out of money and services.

Next, both offenses occurred over the same period of time and within the same geographical location. Mr. Asselin was engaged in the conduct which resulted in the instant offense and the "prior sentence" at the same time and thus the "prior conduct" should be considered relevant conduct to the instant matter. Further, both offenses took place in the same geographical location in Massachusetts. Such factors are highly relevant for this court to take into account when determining

5

whether the similarities between the offenses can allow them to be considered as the same course of conduct.

After such a determination, using the relevant factors, has been made it is evident that Mr. Asselin's "prior sentence" is part of a common plan or scheme and is related to the instant offense.  As such, it is improper to assign three (3) points to Mr. Asselin's Criminal History for the "prior sentence" thus placing him in a Category II of the Sentencing Guidelines. Instead, no points should be assigned and Mr. Asselin should be placed in Category I of the Sentencing Guidelines.

III.   THE GOVERNMENT CREATED UNWARRANTED SENTENCING DISPARTIES BY CHOOSING TO CHARGE MR. ASSELIN IN TWO SEPARATE MATTERS THEREBY PRODUCING ANOMALOUS RESULTS THAT CIRCUMVENT OR DEFEAT THE INTENT OF THE GUIDELINES.

In U.S.S.G. §5G1.3, the Commission sought to mitigate the possible sentence disparities caused by selective charging by the government.  As noted by the Supreme Court in <u>Witte v. United States</u>, 515 U.S. 389, 404-05 (1995),

there are   often valid reasons why related crimes committed by
the same defendant are not prosecuted in the same proceeding,
and §5G1.3 of the Guidelines attempts to achieve some
coordination of sentences imposed in such situations with an eye
towards having such punishments approximate the total penalty
that would have been imposed had the sentences for the different
offenses been imposed at the same time (i.e. had all the
offenses been prosecuted in a single proceeding).

Further, in <u>United States v. Lieberman</u>, 971 F.2d 989 (3rd Cir. 1992), the Third Circuit held that judges may "control any inappropriate manipulation of the indictment through the use of

6

its departure power." The district court grouped the defendant's charges in <u>Lieberman</u> of embezzling and tax evasion and ran both sentences concurrently. The Third Circuit further held that,

> if we were to hold that district judges have no authority to depart on this basis [of count manipulation], it would raise the prosecutor to a position supreme over the district judge vis-à-vis sentencing by virtue of uncontrolled charging discretion.

<u>Id.</u> at 998.

In the instant case the government's selective decision to prosecute Mr. Asselin in two (2) different matters is apparent. Such a decision is unjust. As our First Circuit has held, "cases where injustice appears, sentencing courts can cure it through departure." <u>United States v. Flowers</u>, 995 F.2d 3`5 (1st Cir. 1993). In this matter, the government selectively chose to prosecute Mr. Asselin in two (2) separate matters so that the first case can be used to increase his sentence for the second case. It is clear that the government chose to prosecute the "prior sentence" first and to wait to prosecute the instant offense. Such unbridled power is now being used to the government's advantage in this case to enhance Mr. Asselin's sentence. Such a decision, without the appropriate departure by this court, will most likely result in an appreciably harsher sentence as a result of the sequential prosecution rather than had the government prosecuted these offenses together.

As such, Mr. Asselin respectfully requests that this court depart downward from his Criminal History Category II to Category I.  Such a departure would ensure a just result and would offset the attempted manipulation by the government to increase Mr. Asselin's sentence inappropriately.

IV.     MR. ASSELIN'S CRIMINAL HISTORY CATEGORY SIGNIFICANTLY MISREPRESENTS THE SERIOUSNESS OF HIS CRIMINAL HISTORY OR THE LIKELIHOOD THAT HE WILL COMMIT FURTHER CRIMES AND THUS HE SHOULD BE AFFORDED A DOWNWARD DEPARTURE TO A CATEGORY I.

Under U.S.S.G. § 4A1.3, the sentencing court may alter a defendant's criminal history category if it concludes "that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3(b)(1). Recognizing the inadequacies of the criminal history scoring system, the Sentencing Guideline Commission encourages departures where "reliable information" indicates that the criminal history category is over-represented.  See, e.g. United States v. Lindia, 82 F.3d 1154, 1164-65 (1st Cir.1996); United States v. Rivers, 50 F.3d 1126, 1130 (2nd Cir.1995); United States v. Shoupe, 35 F.3d 835, 837 (3rd Cir.1994); United States v. Adkins, 937 F.2d 947, 952 (4th Cir.1991); United States v. Fletcher, 15 F.3d 553, 557 (6th Cir.1994); United States v. Senior, 935 F.2d 149 (8th Cir.1991); United States v. Reyes, 8 F.3d 1379, 1387 (9th Cir.1993); United

8

States v. Collins, 122 F.3d 1297, 1305-1308 (10th Cir.1997) (upholding departure based on defendant's age, infirmity and mitigating circumstances surrounding one of defendant's predicate convictions); United States v. Webb, 139 F.3d 1390, 1395 (11th Cir.1998); United States v. Spencer, 25 F.3d 1105, 1112 (D.C.Cir.1994). Moreover, a downward departure for criminal history must be based on the defendant's criminal history, not the relevant conduct surrounding the offense itself. U.S. v. Fuller, 332 F.3d 60 (2nd Cir. 2003).

In the instant matter, Mr. Asselin's criminal history is not representative of his Criminal History Category. Mr. Asselin has only one (1) prior offense. This "prior sentence" was, as discussed above, related to the instant matter and selectively prosecuted in an attempt to secure an increased sentence in the instant matter. Although Mr. Asselin's "prior sentence" is serious, it was part of the common plan and scheme that Mr. Asselin was participating in at that time. The government's decision to selectively prosecute these cases gives the appearance that Mr. Asselin's criminal history is not over-represented. However, upon a closer look at the "prior sentence" it is clear that this matter is related to instant matter and thus its use to enhance Mr. Asselin's Criminal History Category over-represents his true criminal history.

V. CONCLUSION

For the foregoing reasons, Mr. Asselin respectfully requests that this court depart downward from his current Criminal History calculation of three (3) points, placing him in a Category II, and place him in a Category I which more appropriate reflects his true criminal history category.

/s/ Roy H. Anderson
Roy H. Anderson, Esq.
935 Main Street, Suite 303
Springfield, MA 01103
Phone: (413) 736-2400
Fax: (413) 788-9178
BBO# 018600
